ELLIS, Judge.
This expropriation suit was instituted under the provisions of LSA-R.S. 48:441 et seq. by the State of Louisiana through the Department of Highways against American Credit Exchange Inc. in order to obtain certain property for the construction of the Baton Rouge Expressway. The plaintiff will be hereinafter referred to simply as the “Highway Department” for the sake of brevity.
The Highway Department’s estimate of the award due the landowner herein was $15,898.00 for the land taken and $7,127.00 *398 as severance damages. Accordingly, a deposit of $23,025.00 was made in connection with the filing of this suit.
After a trial on the merits judgment was rendered by the District Court awarding a total judgment of $28,127.00 for the property actually taken and for severance damages to the remainder. Counsel for the I-Iighway Department perfected an appeal from this judgment.
The property affected consisted of five contiguous lots in Zee Zee Gardens, a subdivision which is designated as an A-l residential zone. The lots formed a rectangular area bounded on the east by Ebony Avenue and on the south by Viero Street, both of which thoroughfares were blacktopped. The total area in these lots before the taking was 47,458 square feet. The strip taken consisted of 27,215 square feet of land and it crossed defendant’s lots diagonally in such a manner that two lots were virtually taken and the other three lots were partially taken. No direct access is available to the expressway from any of the lots in question.
The area left in part of lot 59-D, the only land left to defendant to the north of the expropriated tract, is 6,867.7 square feet. This partial lot presently narrows from a frontage of 58.00 feet on Ebony Avenue to 20.82 feet in the rear and is bounded on the south for 178.16 feet by the expressway.
Lot 49-H and 49-G considered as a unit for the sake of clarity now have a frontage of 56.37 feet on Ebony Avenue to the east and a boundary of 97.15 feet on the west. To the north, this unit is bounded by the expressway for a distance of 178.95 feet and to the south, the original frontage on Fiero Street of 174.24 feet is undisturbed. The area of this unit is 13,-375 square feet.
Counsel for appellant made two main specifications of error in the trial court’s judgment. It is contended that the trial judge erred in “rejecting the State’s appraisal upon which the deposit was made, and in which he found no error, while at the same time engaging in a variety of ‘corrections’ in the defendant’s appraisals and then adopting the ‘amended’ results * * * ” It is urged that the trial court erred in “disregarding the statutory requirements that the defendant carry the burden of proving its claim.”
In this connection, it is strenuously urged by appellant’s counsel that the trial court erred in giving substantial approval to< the conclusions reached by the landowner’s appraisal, after having found in it very serious errors. On the other hand, Mr. Cobb’s appraisal for the Highway Department was dismissed by the trial court for an “obvious error.”
It is suggested that since the trial court found no error in the conclusion of Mr. Pugh, the other appraiser for the Highway Department, then his appraisal should have been approved.
Another point in the trial court’s opinion which is attached is the Court’s finding: “I am of the opinion that damages to the remaining placed at $6,500.00 could be justified, but if I mistake not, the State’s-appraisers in the taking here calculated the damages at $7,000.00.”
Since there were no improvements on the property the “costs approach” was not used. No income as such was received from the property taken. Therefore, the comparable sales approach was used by all four appraisers herein. According to Mr. J. B. Pugh, one of the highway appraisers, this approach is “basically an approach in which you’ve utilized known sales to compare them to subject property to get an indication of value.”
All appraisers testifying in this case used the same initial approach, i. e. the market date or comparable sales approach. As comparable sales, both of the landowner’s appraisers actually used five lot sales in the subdivision immediately adjacent to the subject property. The landowner’s appraisers also converted the value *399 of the subject property into square foot •values due to the fact the lot's left to the landowners contained a great portion of their original front footage, but lost great percentage of their area to the rear.
As pointed out by counsel for the landowner, although four sales were examined by Pugh, only two sales were actually used in his calculations:
“In my opinion the sale from Sachse to Hays is the latest sale, being January 3, 1962. In my opinion its the most indicative of the value of subject property. It indicates $86. The next one would be the Bates sale which indicates on one basis $109 and on another $100. The average is $89. I think that a fair indication would approximate that paid by Hays from Sachse, and if rounded it indicated a value of subject property at $90 a front foot. That’s for lots S9-D and E.”
It is difficult to see how Mr. Pugh arrived at this $90 figure. The above quote is typical of Mr. Pugh’s testimony as a whole. His testimony is most vague and difficult to follow concerning Pugh’s exact method of arriving at adjustments from the comparable sales he actually used to determine the value of subject property. The adjustments for location, for time and for lot types are all quite important. None of these adjustments was explained by Mr. Pugh. He merely gave a figure, without adequate explanation for the front value of subject lots S9-D and E.
Pugh related his comparables to only these two inside lots. Then he related the value of these inside lots in the subject property to the other lots in the subject property. These inside lots were, merely because of their greater depth, considered by Pugh to be substantially more valuable than lots with greater frontage and one ■corner lot.
For these reasons, it is deemed that the testimony of Mr. Pugh is not clear and the methods he used in his appraisals were not appropriate when applied to subject property. The testimony of Mr. Leroy Cobb, appellant’s other appraiser, is not relied -upon, on appeal, by the appellant and is therefore disregarded herein. It is found, after a complete review of the record presented herein that the trial court was not in error in rejecting the appraisals of both of the appraisers for the Department of Highways.
In regard to appellant’s attacks on the testimony of Mr. Kermit A. Williams, which testimony is relied upon heavily by the trial court in arriving at the award granted herein, the following observation is made. It is true that certain errors were made in Mr. Williams’ testimony, as pointed out by counsel for appellant. However, these errors are not deemed to be of such a basic nature as to discredit or weaken the final results obtained. Especially is this true after the indicated adjustments were made by the trial court. The errors made in the testimony relied upon were apparently merely mathematical miscalculations. Counsel for appellant has not pointed out any errors in the adjustments made, but complains only of the fact the adjustments were made.
Similar adjustments were made by the District Judge in the valuation set by Mr. W. D. McCants, Jr. McCants’ method of appraisal was similar to the method employed by Williams. As stated by counsel for the land owner in his appellate brief: “ * * * both of the experts for the property owner gave the District Court the benefit of an analysis both by the front foot method, and the square foot method, and analyses based on five (5) current comparables in close proximity to subject property, and with comparability to shape and sizes of lots * * * In addition, these appraisers adjusted the valuations to the time of the taking. Using this method Mr. Williams and Mr. Mc-Cants placed a front foot value on the subject property of $109.00, after adjustments were made for mathematical errors. *400 With the adjustments the square foot value of the subject property derived from the testimony of Williams and McCants was slightly over 76$S per square foot. These values indicate a valuation of the 27,215 square feet of land taken by the expropriation at $21,000.00 in round figures. It should be noted that the adjustments made by the land owner’s appraisers are found to be appropriate and justified by the record. The Trial Court’s corrections for mathematical errors were also justified and necessary in order that it might arrive at an appropriate award.
Now the question of severance damages remains. The District Judge in his reasons for judgment stated that he did not feel inclined to follow Williams’ estimate of a flat depreciation of 50% on the remaining tract as severance damages nor was he inclined to follow McCants on his depreciation of 40%. The Judge went on to say:
“As to the tract remaining on the north, Mr. Pugh placed a value of $1,160 on the remaining property there. That means, of course, that in his opinion the damages was the value he had placed on Lot 59D less $1,160. Mr. Cobb gave as his opinion that the remaining property north of the taking had a value of $650. I am impressed by the testimony in this case that it has no market value. The property remaining to the south obviously suffered less damage than that remaining to the north because it leaves what all the experts conceded was a suitable building site. If we take the acreage north of the taking and depreciate it entirely at 76‡ a square foot, it brings a total of $5,200 in round figures. Coming back now to the figures of Mr. McCants on the question of damages to the remaining property, which rounded out to $6,500.00 we find that to accept the proposition that the property north of the taking has no value we would depreciate the property south of the taking $1,300. “I am of the opinion that damages to the remaining placed at $6,500 could be justified, but if I mistake not, the state’s appraisers in the taking here calculated the damages at $7,000. Mr. Cobb did not make any final conclusion on that point that we can use because it is obvious that he made an error in the square footage north of the taking,, and Mr. Pugh found the value of the remaining property after the taking to be $5,025. Deducting that from what he placed as the value of the remaining property as a part of the whole resulted in $7,127. That was. the amount stated as damages in the certificate attached to the judgment of taking.
“I feel justified, then, in making an award in this case * * * of $7,127 as damages to the remaining property * * * »
The District Judge was in error in rejecting the Highway Department’s appraisals as respects the value of the taking on the one hand, and in binding the Highway Department to the high value it set as severance damages on the other hand.
The trial court has stated that it felt that severance damages set “at $6500.00 could be justified.” Therefore, for the reasons set forth in the quoted opinion of the District Court, this amount is adopted as the proper valuation for severance damages to the remainder of subject property. This award is justified by the preponderance of the evidence presented.
For the reasons assigned the trial court judgment is amended so as to award the landowner $6,500 as severance damages and affirmed insofar as it awarded the landowner $21,000.00 as just compensation for the property expropriated or a total award of $27,500.00 to American Credit Exchange Inc., for the expropriation.
Amended and affirmed.